IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DAVID DIPRIMIO, | : | CIVIL ACTION |
| Petitioner, | : | |
| | : | |
| | : | |
| | : | |
| STEPHEN GLUNT , et al. | : | |
| Respondents, | : | NO.  14-6256 |

REPORT AND RECOMMENDATION

LINDA K. CARACAPPA
UNITED STATES CHIEF MAGISTRATE JUDGE

      Now pending before this court is a Petition for Writ of Habeas Corpus, filed

pursuant to 28 U.S.C. § 2254, by a petitioner currently incarcerated in the State Correctional

Institution Rockview, in Bellefonte, Pennsylvania.  For the reasons which follow, it is

recommended that the petition be denied and dismissed.

I.      PROCEDURAL HISTORY

      On March 23, 2009, following a bench trial before the Honorable John J.

O'Grady, Jr., in the Philadelphia Court of Common Pleas, petitioner was convicted of attempted

murder and aggravated assault as to Thomas Wilson, aggravated assault as to Jeffrey Schmidt,

Andrew McLaughlin, and Steven Gallagher, and simple assault as to Michael Bryson.  Petitioner

was also convicted of possession of instrument of crime.  The PCRA court, in its opinion filed

pursuant to Pa.R.A.P. 1925(b), set forth the underlying facts of this case as follows:

> On April 27, 2008, [petitioner] got into a fight with patrons at Mick Daniels
> Bar in South Philadelphia. After closing, while the crowd was leaving the
> bar, [petitioner] opened fire from across the street, shooting six times and
> hitting three victims. One of the victims was a man he argued with inside
> the bar, the second victim was a man he argued with outside of the bar, and
> the third victim was a man who had been talking to the second victim at the
> time of the shooting. When the crowd chased [petitioner], he shot a fourth

1

victim. Another man who heard the shots and saw [petitioner] running
eventually subdued [petitioner] and gained control over the firearm.
However, [petitioner] flagged down a police officer and blamed the
shooting on the man who had subdued him. An off duty police officer who
had witnessed the shooting then arrived on scene and explained that
[petitioner] was really the shooter[].

PCRA Court Opinion, 5/21/13, at 1-2.

On May 29, 2009, petitioner was sentenced to an aggregate term of fifteen
(15) to thirty (30) years' incarceration.

Petitioner filed a timely direct appeal. On June 17, 2010, the Pennsylvania
Superior Court dismissed petitioner's claims as meritless and affirmed the trial court's
sentence of judgment. Petitioner filed a petition for allowance of appeal to the
Pennsylvania Supreme Court, which was denied on December 28, 2010.

On March 26, 2010, represented by new counsel, petitioner filed a timely petition
for post-conviction relief, pursuant to the Post Conviction Relief Act ("PCRA"), 42 Pa. C.S. §
9541, *et seq*. On January 7, 2013, the PCRA court denied petitioner's petition. Petitioner filed a
notice of appeal to the Superior Court. Petitioner's counsel subsequently withdrew from the
matter, stating that counsel had only been hired for the initial proceedings. New counsel was
appointed, and subsequently submitted a no-merit letter pursuant to Commonwealth v. Finely,
379 Pa. Super. 390, 550 A.2d 213 (1988) (en banc)[1], with a petition to withdraw. On September
16, 2014, the Superior Court affirmed the PCRA court dismissal of the petition. Petitioner did
not seek further review.

---

[1] Pursuant to Commonwealth v. Finley, 550 A.2d 213 (Pa. Super. 1988), appointed counsel in a post
conviction proceeding may be given leave to withdraw upon the submission of a "no-merit" letter that details the
nature and extent of this review of the case, lists each issue the petitioner wished to have reviewed, and explains his
assessment that the case lacks merit. The court must also conduct an independent review of the record and must
agree with counsel that the petition is meritless before dismissing the petition.

On October 24, 2014,[1] petitioner filed the instant federal habeas corpus petition

with this court pursuant to 28 U.S.C. § 2254, raising the following claims[2]:

1) The evidence was insufficient to sustain petitioner's convictions;

2) Trial counsel was constitutionally ineffective for failing to investigate or present a diminished capacity defense;

3) Ineffective assistance of trial counsel for failing to request a competency hearing before trial; and

4) Ineffective assistance of trial counsel for failing "to conduct a reasonable investigation or make a decision that would have made a particular investigation unnecessary."

Respondents argue that petitioner's first three claims lack merit, and petitioner's fourth claim is

procedurally defaulted.  After detailed review of the state court records, we find that petitioner is

not entitled to relief and petitioner's petition for habeas corpus should be denied.

II.     STANDARDS OF REVIEW

Under the current version of the Antiterrorism and Effective Death Penalty Act of

1996 ("AEDPA"), an application for Writ of Habeas Corpus from a state court judgment bears a

significant burden.  Section 104 of the AEDPA imparts a presumption of correctness to the state

court's determination of factual issues – a presumption that petitioner can only rebut by clear and

convincing evidence.  28 U.S.C. § 2254(e)(1) (1994).  The statute also grants significant

deference to legal conclusions announced by the state court as follows:

An application for a writ of habeas corpus on behalf of a
person in custody pursuant to the judgment of a State court
shall not be granted with respect to any claim that was adjudicated

---

[1] Although the habeas petition was not docketed until October 30, 2014, the "mailbox rule" applies. Under the "mailbox rule," a *pro se* prisoner's habeas petition is considered filed on the date the prisoner delivers the complaint to prison authorities for filing. *See Houston v. Lack*, 487 U.S. 266, 276 (1988). Here, petitioner signed his petition on October 24, 2014 so we will presume that he also delivered it to authorities for filing on that date.
[2] In the habeas petition, petitioner claimed that trial counsel was ineffective for failing to call certain witnesses. However, in petitioner's memorandum of law in support of the habeas petition, petitioner states that he is withdrawing that claim because petitioner was unable to secure affidavits from the witnesses.

on the merits in State court proceedings unless adjudication of the claim -

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

The Supreme Court of the United States, in Williams v. Taylor, 529 U.S. 362, 404-05, 120 S. Ct. 1495, 1518-19 (2000), interpreted the standards established by the AEDPA regarding the deference to be accorded state court legal decisions, and more clearly defined the two-part analysis set forth in the statute.  Under the first part of the review, the federal habeas court must determine whether the state court decision was "contrary to" the "clearly established federal law, as determined by the Supreme Court of the United States."  Williams, 529 U.S. at 404.  Justice O'Connor, writing for the majority of the Court on this issue, explained that a state court decision may be contrary to Supreme Court precedent in two ways: (1) "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law," or (2) "if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to ours [the Supreme Court's]."  Id. at 405.  However, this "contrary to" clause does not encompass the "run-of-the-mill" state court decisions "applying the correct legal rule from [Supreme Court] cases to the facts of the prisoner's case."  Id. at 406.

To reach such "run-of-the-mill" cases, the Court turned to an interpretation of the "unreasonable application" clause of § 2254(d)(1).  Id. at 407-08.  The Court found that a state court decision can involve an unreasonable application of Supreme Court precedent in one of

two ways: (1) "if the state court identifies the correct governing legal rule from this Court's cases but unreasonably applies it to the facts of the particular state prisoner's case," or (2) "if the state court either unreasonably extends a legal principle from our precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." Id. at 407.  However, the Supreme Court specified that under this clause, "a federal habeas court may not issue the writ simply because the court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable." Id. at 411.  The Supreme Court has more recently pronounced:  "The question under the AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable – a substantially higher threshold." Schriro v. Landrigan, 550 U.S. 465, 573, 127 S. Ct. 1933, 1939 (2007).

## III.     DISCUSSION OF MERITS

Petitioner's first three claims were properly exhausted in the state courts and will now be addressed on the merits.

### Claim One

Petitioner's first claim is that the evidence was insufficient to sustain petitioner's convictions.  Petitioner argues that the evidence showed that petitioner did not have the intent to murder or assault any of the victims.  Petitioner further argues that evidence shows that petitioner acted in self-defense and with a reasonable belief that petitioner would be assaulted or murdered. Petitioner claims that the evidence shows that petitioner was confronted by a large group, who then started chasing petitioner, and petitioner acted in self-defense.

Petitioner raised this claim on direct appeal to the Superior Court.  The Superior

Court denied this claim, finding that the evidence was sufficient to prove the elements of the crimes petitioner was convicted of.

The Supreme Court has recognized that due process requires that a person can be convicted of a crime only when every element of the offense has been proven beyond a reasonable doubt.  Jackson v.  Virginia, 443 U.S. 307, 316, 99 S.Ct.  2781 (1979).  Where one has challenged the sufficiency of evidence, a court must determine "whether, after reviewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  Sullivan v.  Cuyler, 723 F.2d 1077, 1083-84 (3d Cir.  1983)(quoting Jackson, 443 U.S. at 319)(emphasis in original).   The above standard must be applied "with explicit reference to the substantive elements of the criminal offense as defined by state law."  Jackson, 443 U.S. at 324 n. 16; see also Orban v. Vaughn, 123 F.3d 727, 731-32 (3d Cir. 1997)(applying Jackson standard to sufficiency of evidence claim for state conviction for aggravated assaulted), cert denied, 522 U.S. 1059 (1998). The AEDPA limits the federal court's review of a sufficiency of evidence claim in that relief can only be granted where the state court's decision was an objectively unreasonable application of the standard set forth in Jackson.  See Williams, 529 U.S. at 407-08.

In evaluating Petitioner's insufficiency of the evidence claims, the Superior Court applied the Pennsylvania standard for such claims.[3]  The Third Circuit has found this standard to be consistent with the Supreme Court's Jackson standard.  See  Evans v. Court of Common Pleas, Delaware County, 959 F.2d 1227, 1232 (3d Cir.1992) (stating that the insufficiency standard applied by Pennsylvania courts is consistent with Jackson).  Thus, the state courts have not

---

[3] When evaluating insufficiency of the evidence claims, the standard the Pennsylvania court's apply is "whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt."  Commonwealth v. Bruce, 916 A.2d 657, 661 (Pa. Super. 2007).

applied a standard "contrary to" clearly established federal law. This court will now determine if the Superior Court's application of that standard to petitioner's insufficiency claims was "objectively unreasonable."

### *Attempted Murder*

Petitioner first raises a sufficiency of the evidence claim with regard to petitioner's conviction for the attempted murder of Thomas Wilson.

Under Pennsylvania law, "[a] person commits an attempt when, with intent to commit a specific crime, he does any act which constitutes a substantial step toward the commission of that crime." 18 Pa. Cons.Stat. § 901(a).  "A criminal homicide constitutes murder of the first degree when it is committed by an intentional killing." 18 Pa. Cons.Stat. § 2502(a). Thus, the elements of attempted murder are (1) the taking of a substantial step, (2) towards an intentional killing.  18 Pa.C.S.A. §§ 901(a), 2502(a).  Commonwealth v. Johnson, 874 A.2d 66 (Pa. Super. 2005).

In reviewing this claim the Superior Court cited to Mr. Wilson's testimony as follows:

| | |
|---|---|
| Thomas Wilson: | When I came out of the bar and we were walking up Snyder, there was yelling going on. And [petitioner] came in front of me and had a gun pointed at me and shot me. |
| Assistant District Attorney: | Where do you remember him standing?<br>. . . |
| Thomas Wilson: | Within ten feet, ten feet, I guess. |
| Assistant District Attorney: | Had you guys had any interaction?  Had you guys argued, you and [petitioner]? |
| Thomas Wilson: | There was – everybody was yelling, but when he came up to me, I said something to him. |

7

| | |
|---|---|
| Assistant District Attorney: | What did you say? |
| Thomas Wilson: | I said, "Are you going to fucking shoot me?<br>. . .<br>Because the gun was already pointed at me. |
| Assistant District Attorney: | Did he say anything back? |
| Thomas Wilson: | No; he just shot.<br>. . .<br>I started to walk away to just get away from the scene and he shot me again. |

N.T., 3/23/09, at 169-171.

Robert Ferrara and Steven Gallagher testified at trial, and corroborated Thomas Wilson's testimony. Mr. Ferrara testified that petitioner was screaming at people in the crowd, and that Thomas Wilson started to argue back. N.T., 3/23/09, at 87-88. Mr. Ferrara testified that Thomas Wilson said, "What, are you gonna shoot me?", and that "[petitioner] just stared firing at him." N.T., 3/23/09, at 88. When asked who petitioner was shooting at, Mr. Gallagher testified "it was pretty obvious that it was Tommy Wilson. He was like six to eight-ten feet in front of him." N.T., 3/23/09, at 88.

The Superior Court noted that the evidence showed that petitioner leveled his gun and then fired it twice in the direction of Thomas Wilson, whom was standing approximately ten feet in front of petitioner. See Habeas Pet. Resp. 8/20/15, Exhibit A, at 10 (Pa. Super. Ct. Op. 6/17/10). Thus, the Superior Court found that there was sufficient evidence to prove petitioner's intent to kill. Id.

We find that, after reviewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of attempted murder beyond a reasonable doubt. Thus, we cannot find the Superior Court's application of the

Jackson standard to petitioner's insufficiency claim was "objectively unreasonable."

*Aggravated Assault*

Petitioner next argues that the evidence was insufficient to support petitioner's convictions of aggravated assault of Thomas Wilson, Jeffrey Schmidt, Steven Gallagher, and Andrew McLaughlin.

In Pennsylvania, a person may be convicted of aggravated assault if he "(1) attempts to cause serious bodily injury to another, or causes such injury intentionally, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life; (4) attempts to cause or intentionally or knowingly causes bodily injury to another with a deadly weapon." 18 Pa.C.S.A. § 2702(a)(1), (4).  A "serious bodily injury" is a "bodily injury which creates a substantial risk of death or which causes serious, permanent disfigurement, or protracted loss or impairment of function of any bodily member or organ." 18 Pa.C.S.A. § 2301.

The Superior Court reviewed the testimony of record and noted that the testimony showed that after shooting Thomas Wilson, petitioner fled while continuing to fire several more shots at the crowd of individuals behind him, emptying his gun, and wounding Jeffery Schmidt, Steven Gallagher, and Andrew McLaughlin in the process.  The Superior Court found that the evidence was more than sufficient to show that petitioner intentionally used a deadly weapon to cause serious bodily injury, and that the guilty verdicts on the aggravated assault charges were proper.  See Habeas Pet. Resp. 8/20/15, Exhibit A, at 12 (Pa. Super. Ct. Op. 6/17/10).

Steven Gallagher testified that after he initially heard petitioner's first gunshots, petitioner started running and people started to chase petitioner.  The testimony showed that while petitioner was running, petitioner continued to fire shots and wounded Jeffery Schmidt and Steven Gallagher.  N.T., 3/23/09, at 145-148.  Andrew McLaughlin testified that he heard

petitioner's initial shot, looked back and saw petitioner holding the gun.  Mr. McLaughlin

testified that he then heard one more shot, and that is when Mr. McLaughlin got shot in the back.

N.T., 3/23/09, at 160.

        The Superior Court's found that the evidence was sufficient to show that

petitioner intentionally used a deadly weapon to cause serious bodily injury, and in turn prove

the elements necessary for an aggravated assault conviction.  The court cannot find that "no

rational trier of fact could have agreed" that petitioner intended to seriously injure Thomas

Wilson, Jeffrey Schmidt, Steven Gallagher, and Andrew McLaughlin, or that petitioner took

substantial steps towards inflicting a serious bodily injury.  Additionally, the court cannot find

that the Superior Court was "objectively unreasonable" in finding that there was sufficient

evidence to support petitioner's aggravated assault convictions.

        <u>*Simple Assault*</u>

        Petitioner next argues that the evidence was insufficient to support petitioner's

conviction for simple assault as to Michael Bryson.

        In Pennsylvania, a person may be convicted of simple assault if they attempt to

cause or intentionally, knowingly, or recklessly cause bodily injury to another.  18 Pa.C.S.A. §

2701(a)(1). "Bodily injury" is defined as "impairment of physical condition or substantial pain."

18 Pa.C.S.A. § 2301.

        The Superior Court summarized the testimony as to Mr. Bryson as follows:

        Mr. Bryson testified that he encountered [petitioner] running from the bar,
attempting to fire his weapon, but no bullets emerged. Appellant then
pointed the gun at Mr. Bryson and the two began to struggle, during which
Mr. Bryson managed to disarm [petitioner]. N.T., 3/23/09, at 115-130.  Mr.
Bryson sustained various injuries including swelling, bruising, and a torn
meniscus in his knee. <u>Id.</u> at 125. Officer Williams corroborated Mr.
Bryson's testimony and further stated that [petitioner] yelled to officers that
Mr. Bryson was the shooter and directed the officers, who had drawn their

guns, to shoot Mr. Bryson. Id. at 100-104, 124.

See Habeas Pet. Resp. 8/20/15, Exhibit A, at 12 (Pa. Super. Ct. Op. 6/17/10).

The Superior Court found that "the evidence was sufficient to support [petitioner's] simple

assault conviction."  See Commonwealth v. Reynolds, 835 A.2d 720, 726 (Pa. Super.

2003) (citations omitted) ("[T]he act of pointing a gun at another person [can] constitute

simple assault as an attempt by physical menace to put another in fear of imminent serious

bodily injury."); Reynolds, 835 A.2d at 729 (even if the gun were not loaded, the

circumstances surrounding Appellant's actions in pointing the gun may present an actual,

foreseeable, risk of danger)." See Habeas Pet. Resp. 8/20/15, Exhibit A, at 13 (Pa. Super.

Ct. Op. 6/17/10).

      The evidence supports petitioner's simple assault conviction.  The evidence

shows that petitioner attempted to cause bodily injury to Mr. Bryson, when petitioner pointed the

gun at Mr. Bryson and fired, even if there were no bullets remaining in the gun.  The court

cannot find the Superior Court's application of the Jackson standard to petitioner's insufficiency

claim was "objectively unreasonable."

### *Possession of an Instrument of Crime*

      Petitioner argues that the evidence was insufficient to support petitioner's

conviction for possession of an instrument of crime.

      The evidence presented at trial was sufficient to support petitioner's

conviction for possession of an instrument of crime.  As explained above, the evidence

showed that petitioner fired a loaded weapon into a crowd, and in doing so petitioner shot

multiple individuals.  Based on the evidence it was reasonable to find that petitioner

possessed an instrument of crime.  The Superior Court's finding that there was sufficient

evidence to support petitioner's conviction as to this charge was not "objectively unreasonable."

<u>*Self-Defense*</u>

Finally, petitioner supports the above claims of insufficient evidence by arguing that petitioner was acting in self-defense.

Petitioner argues that the testimony at trial showed that Thomas Wilson was part of a large crowd that was aggressively confronting petitioner outside of a bar. Petitioner claims that the crowd was yelling and screaming at petitioner.  Petitioner argues that the trial testimony shows that the crowd starts chasing petitioner. In reviewing this claim, the Superior Court stated the following "[a]t trial, [petitioner] testified that when he exited Mick Daniels Bar, he thought he was being chased and crossed the street. He testified that the crowd outside the bar began to yell threats at him, at which point he pulled out his weapon. The agitated crowd began to approach him, and he fired into the air. The crowd then began to yell, "It's fake, It's fake. Get him.", while approaching him, whereupon he fired his gun, striking Mr. Wilson who was standing in the street in front of him. [Petitioner] then fled and, while being pursued, continued to shoot behind him as he ran. N.T., 3/24/09, at 28-32."  <u>See</u> Habeas Pet. Resp. 8/20/15, Exhibit A, at 13 (Pa. Super. Ct. Op. 6/17/10).

Pennsylvania law provides that if an individual raises the defense of self-defense, the burden is on the Commonwealth to prove beyond a reasonable doubt that the defendant's act was not justifiable self-defense.  The Commonwealth must establish "at least one of the following: (1) the accused did not reasonably believe that he was in danger of death or serious bodily injury; or (2) the accused provoked or continued the use of

force; or (3) the accused had a duty to retreat and the retreat was possible with complete

safety.  It remains the province of the fact finder to determine whether the accused's belief

was reasonable, whether he was free of provocation, and whether he had no duty to

retreat." <u>See</u> Habeas Pet. Resp. 8/20/15, Exhibit A, at 14 (Pa. Super. Ct. Op. 6/17/10,

<u>quoting</u> <u>Commonwealth v. McClendon</u>, 874 a.2d 1223, 1229-1230 (Pa. Super. 2005)).

   Although petitioner argues that he was confronted by an agitated crowd,

who began chasing petitioner, the evidence shows otherwise.  The evidence shows that

Thomas Wilson was standing approximately ten feet from petitioner when petitioner

raised his gun at Mr. Wilson.  Mr. Wilson responded by asking petitioner if he was going

to shoot him.  Petitioner then shot Mr. Wilson.  The evidence shows that it was not until

after petitioner fired the initial shots at Mr. Wilson, that the crowd began to chase

petitioner.  The testimony at trial showed that while petitioner ran away, petitioner

continued to fire shots into the crowd.  Once petitioner encountered Mr. Bryson, petitioner

attempted to shoot Mr. Bryson but petitioner's weapon was out of bullets.  Mr. Bryson

was able to subdue petitioner and remove the gun from petitioner.  Finally, the evidence

shows that once police arrived, petitioner tried to tell the police that it was Mr. Bryson

who was trying to shoot petitioner.

   The Superior Court reviewed this claim and noted that there was no

evidence that petitioner was unable to retreat, or that anyone in the crowd was armed.

Additionally, the Superior Court noted that there is evidence that petitioner may have

provoked the altercation.  Thus, the Superior Court found that there was sufficient

evidence to support a determination that petitioner did not act in justifiable self-defense.

   The above summarized evidence was sufficient for the state court to find

13

that petitioner did not act in self-defense.  The court does not find that the state court's

decision was an objectively unreasonable application of the standard set forth in Jackson.

Thus, petitioner's sufficiency of the evidence claim should be denied in its entirety.

Ineffective Assistance of Counsel- Claims Two and Three

Petitioner's claims two and three assert that petitioner's trial counsel failed

to provide ineffective assistance.

When reviewing claims of ineffective assistance of counsel, this court must view

the totality of the evidence before the trial court and determine whether the petitioner has shown

that the decision reached is reasonably likely to have been different, absent the alleged

ineffectiveness of counsel.  Strickland v. Washington, 466 U.S. 668, 695, 104 S. Ct. 2052, reh'g

denied, 467 U.S. 1267, 104 S. Ct. 3562 (1984).  The Sixth Amendment to the United States

Constitution recognizes the right of every criminal defendant to effective assistance of counsel.

U.S. Const., amend. VI.  The Supreme Court has set forth a two-prong test - both parts of which

must be satisfied - by which claims alleging counsel's ineffectiveness are adjudged.  Id. at 668.

First, the petitioner must demonstrate that his trial counsel's performance fell below an "objective

standard of reasonableness."  Id.  The Supreme Court has explained that:

> A fair assessment of attorney performance requires that every
> effort be made to eliminate the distorting effects of hindsight, to
> reconstruct the circumstance of counsel's challenged conduct,
> and to evaluate the conduct from counsel's perspective at the
> time.  Because of the difficulties inherent in making the
> evaluation, a court must indulge a strong presumption that
> counsel's conduct falls within the wide range of reasonable
> professional assistance; that is, the defendant must overcome
> the presumption that, under the circumstances, the challenged
> action "might be considered sound trial strategy."  Id. at 689
> (quoting Michel v. Louisiana, 350 U.S. 91, 76 S. Ct. 158,
> 163-64 (1955)).

A convicted defendant asserting ineffective assistance must therefore identify the

14

acts or omissions that are alleged not to have been the result of reasoned professional judgment. Id. at 690.  Then the reviewing court must determine whether, in light of all the circumstances, the identified acts or omissions were outside "the wide range of professionally competent assistance."  Id.  Under Pennsylvania law, counsel is not ineffective for failing to raise baseless or frivolous issues.  Commonwealth v. Wilson, 393 A.2d 1141, 1143 (Pa. 1978).

Second, the petitioner must demonstrate that his counsel's deficient performance prejudiced the defense.  Strickland, 466 U.S. at 687.  To establish prejudice, the petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional error, the result of the proceeding would have been different."  Id. at 694.  A reviewing court need not determine whether counsel's performance was deficient before considering whether the petitioner suffered any prejudice as a result of the alleged deficiency.  If it is easier to dispose of an ineffectiveness claim for lack of the requisite prejudice, that course should be followed.  Id. at 697.

Claim Two

Petitioner's second claim is that trial counsel was ineffective for failing to present a diminished capacity defense based on the injuries that petitioner sustained in a motorcycle accident approximately three years before the shooting at issue in the instant matter.

Petitioner raised this claim on collateral appeal, and the Superior Court denied said claim.  The Superior Court explained that under Pennsylvania law "diminished capacity is an extremely limited defense, which requires extensive psychiatric testimony establishing a defendant suffered from one or more mental disorders which prevented him from formulating the specific intent to kill. Only where a defendant admits liability and contests the degree of guilt is a diminished capacity defense available."  See Habeas Pet.

Resp. 8/20/15, Exhibit B, at 14 (Pa. Super. Ct. Op. 10/26/14, quoting Commonwealth v.
Cuevas, 832 A.2d 388, 393 (Pa. 2003)).  The Superior Court applied that law, and
explained that petitioner failed to identify with any specificity a mental illness or disorder
that affected petitioner's ability to form the specific intent to kill.  Further, the Superior
Court explained that petitioner only made generic references to hospital, doctor, and
prescription medication records, along with testimony from friends and family.  The
Superior Court found these generic references to be inadequate to present a material issue
of fact in the absence of any proffer of expert psychiatric testimony.  Based on the fact that
petitioner failed to present sufficient evidence of diminished capacity, the Superior Court
found that the PCRA court did not error in dismissing petitioner's PCRA petition as to this
issue without a hearing.

        We find that the state court's decision was a reasonable application of
Strickland.  Petitioner has failed to show that his trial counsel's performance fell below an
"objective standard of reasonableness."  Strickland, 466 U.S. at 668.  Petitioner supports
his diminished capacity claim with documentation from petitioner's motorcycle accident,
that took place approximately three years prior to the shooting at issue.  The records show
that petitioner had a traumatic brain injury in 2005 and was treated for such.  There is a
reference to occupational therapy and a neuropsychologist appointment.  There is no
medical evidence relating to any ongoing mental condition at the time of the shooting.
There is no evidence from a psychiatric expert relating to petitioner's diminished capacity.
Further, petitioner does not argue that current psychiatric evidence would have been
available to trial counsel.  Trial counsel cannot be found ineffective for failing to present a
defense, when the evidence does not support said defense.  Trial counsel did present the

jury with the evidence that was available to trial counsel, relating to petitioner's head

injury.  Trial counsel put on testimony from petitioner's father, that petitioner was in an

accident and suffered a brain injury, and that the brain injury affected petitioner's

"thinking ability."  N.T. 3/24/09, at 19-20.  Petitioner's father told the jury that petitioner

does not "comprehend a lot of what's going on."  Id.   The evidence did not support a

diminished capacity defense, and trial counsel did present the evidence that was available

to counsel.

        Petitioner is unable to show that "counsel's representation fell below an objective

standard of reasonableness." As a result, the court does not find that the state court decision was

"contrary to" the "clearly established federal law, as determined by the Supreme Court of the

United States."  Williams, 529 U.S. at 404.  As such, this claim should be denied as meritless.

        Claim Three

        Petitioner's third claim is that trial counsel was ineffective for failing to

request a pretrial competency hearing based on the fact that petitioner had sustained a head

injury in the motorcycle accident three years prior to the shooting.

        The Superior Court reviewed this claim on collateral appeal and found it

meritless.  The Superior Court explained that under Pennsylvania law, in order to establish

incompetence, a [petitioner] has the burden of proving that he was either unable to

understand the nature of the proceedings against him or to participate in his own defense."

See Habeas Pet. Resp. 8/20/15, Exhibit B, at 12 (Pa. Super. Ct. Op. 10/26/14, quoting In re

R.D., 44 A.3d 657, 665 (Pa. Super. 2012).

        The Superior Court explained that petitioner failed to make any argument that

petitioner was in fact incompetent, that petitioner was unable to understand the proceedings, or

that petitioner could not assist in his defense.  In the instant habeas petition, petitioner simple

states that trial counsel could have presented psychiatric testimony and medical records that

petitioner was not competent to stand trial.  Petitioner again fails to argue any specific evidence

that petitioner was not competent to stand trial.  As explained by the Superior Court, petitioner's

colloquies belied petitioner's incompetency claim.  During the court's colloquy of petitioner,

petitioner testified that petitioner had never been treated for any mental or emotional problems

that would have affected petitioner's decision to waive a jury trial, and that petitioner was acting

of his own free will.  N.T., 3/23/09, at 8.  Petitioner has failed to prove that he was unable to

understand the nature of the proceedings against him or to participate in petitioner's own

defense.  Trial counsel cannot be ineffective for failing to request a pretrial competency hearing,

when petitioner has not proven that there is any evidence that petitioner was incompetent to

stand trial.  The court does not find that the state court decision was "contrary to" the "clearly

established federal law, as determined by the Supreme Court of the United States."  Williams,

529 U.S. at 404.  As such, this claim should be denied as meritless.

## IV.     PROCEDURAL DEFAULT

Petitioner's fourth claim is procedurally defaulted.

A state prisoner must exhaust his remedies in state court in order for a federal

court to review the claim and grant relief.  O'Sullivan v. Boerckel, 526 U.S. 838, 842, 119 S. Ct.

1728, 1731 (1999).  A petitioner is not deemed to have exhausted the remedies available to him

if he has a right under state law to raise, by any available procedure, the question presented.  28

U.S.C. § 2254(c) (1994); Castille v. Peoples, 489 U.S. 346, 350, 109 S. Ct. 1056, 1059, reh'g

denied, 490 U.S. 1076, 109 S. Ct. 2091 (1989).  In other words, a petitioner must invoke "one

complete round of the state's established appellate review process" in order to exhaust his

remedies.  <u>O'Sullivan</u>, 526 U.S. at 845.  A habeas petitioner retains the burden of showing that all of the claims alleged have been "fairly presented" to the state courts, and that the claims brought in federal court be the "substantial equivalent" of those presented to the state courts. <u>Santana v. Fenton</u>, 685 F.2d 71, 73-74 (3rd Cir. 1982), <u>cert. denied</u>, 459 U.S. 1115, 103 S. Ct. 750 (1983).  In the case of an unexhausted petition, the federal courts should dismiss without prejudice, otherwise they risk depriving the state courts of the "opportunity to correct their own errors, if any."  <u>Toulson v. Beyer</u>, 987 F.2d 984, 989 (3rd Cir. 1993).

However, "[i]f [a] petitioner failed to exhaust state remedies and the court to which petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred... there is procedural default for the purpose of federal habeas..." <u>Coleman v. Thompson</u>, 501 U.S. 722, 735 n.1, 111 S. Ct. 2546, <u>reh'g denied</u>, 501 U.S. 1277, 112 S. Ct. 27 (1991).

Further, procedural default occurs when an issue is asserted in the state courts but the state courts do not address the issue on the merits because of an independent and adequate state procedural rule.  <u>Coleman</u>, 501 U.S. at 729.  "In the context of direct review of a state court judgment, [this] doctrine is jurisdictional... [b]ecause this Court has no power to review a state law determination that is sufficient to support the judgment."  <u>Id.</u>  "In the absence of [the procedural default doctrine] in federal habeas, habeas petitioners would be able to avoid the exhaustion doctrine by defaulting their federal claims in state court."  <u>Id.</u>, at 732. An issue is waived if a petitioner fails to raise it and the issue could have been raised before trial, at trial, on appeal, in a habeas corpus proceeding, or in a prior proceeding. 42 Pa. Cons.Stat. Ann. § 9544(b); <u>see also</u>  <u>Sistrunk v. Vaughn</u>, 96 F.3d 666, 671 n. 4 (3d Cir.1996) ("[T]he [Pennsylvania Rules of Appellate Procedure] dictate that an issue raised at the trial level but not preserved on

appeal will not be considered by any subsequent appellate court."); Commonwealth v. D'Collanfield, 805 A.2d 1244, 1246 (Pa.Super.Ct.2002) (holding an issue not preserved on appeal was waived).

In the event a petitioner brings a claim which is procedurally defaulted, he is not entitled to federal habeas review unless he can show that his default should be excused.  Such excuse is allowed only where the petitioner can show "cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims would result in a fundamental miscarriage of justice."  Coleman, 501 U.S. at 750; Wenger v.  Frank, 266 F.3d 223, 224 (3d Cir.  2001).  To satisfy the cause and prejudice test, petitioner must show that "some objective factor external to the defense impeded efforts to comply with the State's procedural rule."  Slutzker v.  Johnson, 393 F.3d 373, 381 (3d Cir.  2004).

Petitioner's fourth claim is that trial counsel was ineffective for failing to review crime scene photos that "show several broken bottles in the same area the shell casings are located in," which petitioner argues proves that the crowd was throwing bottles at petitioner, and not just yelling at petitioner.

Petitioner raised this claim in his Rule 1925(b) statement to the PCRA court, however, the state court found the instant claim was waived.  The state court refused to review the claim.  It was determined that petitioner's claim was waived because it was not raised in petitioner's PCRA petition, rather petitioner waited until his Rule 1925(b) statement to raise the claim.  The Superior Court explained that "it is well settled that issues not raised in a PCRA petition cannot be considered on appeal." See Habeas Pet. Resp. 8/20/15, Exhibit B, at 17 (Pa. Super. Ct. Op. 10/26/14, quoting Commonwealth v. Ousley, 21 A.3d 1238, 1242 (Pa. Super. 2011)).

The Superior Court rested its decision not to review petitioner's claim purely on state law, with no reference to federal law or the federal constitution.  Therefore, this court must further conclude that the Superior Court's determination that petitioner failed to meet the state requirements for review of his claim constitutes an independent state procedural ground.  It is not within "the province of a federal habeas court to reexamine state-court determinations on state-law questions," Estelle v. McGuire, 502 U.S. 62, 67–68, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991), such as what sort of claims are properly presented in state collateral proceedings.  Since, the state court never reviewed this claim on a federal ground that could then be subject to habeas review the claim is considered procedurally defaulted and barred from federal habeas review.

Petitioner has not asserted cause and prejudice, nor has he shown that the court's failure to consider this claim would result in a fundamental miscarriage of justice.  Thus, we must dismiss petitioner's fourth claim.

Therefore, we make the following:

<u>RECOMMENDATION</u>

AND NOW, this 28th day of October, 2015, IT IS RESPECTFULLY RECOMMENDED that the petition for Writ of Habeas Corpus be DENIED with prejudice.  Further, there is no probable cause to issue a certificate of appealability.

The petitioner may file objections to this Report and Recommendation.  See Local Civ. Rule 72.1.  Failure to file timely objections may constitute a waiver of any appellate rights.

BY THE COURT:


  /S LINDA K. CARACAPPA
LINDA K. CARACAPPA
UNITED STATES MAGISTRATE JUDGE